**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ARNOLD TRANSPORTATION SERVICES, INC.<br><br>Plaintiff,<br><br>v.<br><br>FRAMAUR ASSOCIATES, LLC,<br><br>Defendant. | Civil Action No. 14-4280 (FLW) (LHG)<br><br>**OPINION** |

**Hon. Freda L. Wolfson, U.S.D.J.:**

Before the Court is the motion of Arnold Transportation Services, Inc. ("Plaintiff" or "Arnold") for summary judgment on its Complaint for breach of contract against Framaur Associates, LLC ("Defendant"), seeking $1,368,398.01 in compensatory damages, plus sanctions in the form of attorney's fees and costs under Fed. R. Civ. P. 11(b). Plaintiff contends that Defendant failed to pay for transportation services rendered and invoiced to Defendant pursuant to the parties' agreement and engaged in bad faith delay in proceedings before this Court. Defendant does not oppose the motion. For the reasons set forth below, the Court grants Plaintiff's motion on its breach of contract claim and will enter judgment in the amount of $1,368,398.01 plus prejudgment interest in the Order to follow; Defendant's counterclaims are dismissed; and Plaintiff's request for Rule 11(b) sanctions is denied without prejudice, with leave granted to file a separate motion within 30 days of this Opinion and the Order to follow.

FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff Arnold is a tractor-trailer shipping carrier and Defendant Framaur is a shipping broker. In or around August 2012, Arnold and Framaur entered into a dedicated shipping

1

agreement (the "Agreement"). Plaintiff's Statement of Undisputed Material Fact ("Statement"), ¶ 5; Bretl Decl. at ¶ 5 and Ex. 2. The Agreement sets forth the terms under which Arnold was to ship MillerCoors beer from Elkton, Virginia, and Eden, North Carolina, to a number of locations, primarily in New Jersey and New York. Statement at ¶¶ 7-8; Bretl Decl. at ¶ 6. Under the Agreement, Arnold was required to dedicate certain of its tractors and trailers for Framaur's exclusive use in shipping the beer. Bretl Decl. at ¶6. Arnold was required to dedicate five tractors and 15 trailers to the Elkton, Virginia, route, providing a capacity of 15 loads per week, and to dedicate 10 tractors and 30 trailers to the Eden, North Carolina, route, providing a capacity of 30 loads per week. Statement at ¶¶ 7-8. The standard practice in such "dedicated equipment" contracts is that the broker or customer, in this case Framaur, dictates how the dedicated equipment will be used by the carrier, in this case Arnold, who is obligated to make the equipment available to the broker or customer. Bretl Decl. at ¶ 13. The Agreement governs only the 15 tractors and 45 trailers dedicated by Arnold to Framaur. *Id.* Accordingly, although the Agreement does not preclude Framaur from requesting additional equipment from Arnold over and above the dedicated equipment, it does not supply the terms under which such equipment would be provided, which would have to be negotiated separately. *Id.*

The Agreement went into effect on September 1, 2012. Statement at ¶ 5; Bretl Decl. at Ex. 2. From its original effective date until in or around March 2014, the Agreement provided that Framaur would be billed by Arnold for the use of Arnold's tractors and trailers based on the mileage driven at a rate of $1.40 per mile. Statement at ¶ 10; Bretl Decl. at ¶ 8. The Agreement also provided that Framaur would be charged for a minimum of 2,350 miles per tractor per week, regardless of the actual mileage driven. Statement at ¶ 9; Bretl Decl. at ¶ 8. This provision reflected the fact that Arnold had "dedicated" the tractors and trailers to Framaur, such that they

could not be made available to other customers, even if Framaur, who was empowered to dictate how the tractors and trailers would be used, did not in fact use them in a given week or used them in a limited manner. Statement at ¶ 6. Payment was to be made within 45 days of receipt of an invoice for services. *Id.* at ¶ 14.

In addition to the mileage charge, the Agreement provided that Framaur was responsible for other charges and expenses associated with the operation of the tractors and trailers, including tolls and a fuel surcharge. Bretl Decl. at ¶ 9.

Because the Agreement was a "dedicated equipment" contract, it also provided that Framaur was responsible for the round trip of each Arnold tractor-trailer making the beer deliveries. Statement at ¶ 11; Bretl Decl. at ¶ 10. Under standard, non-dedicated contracts, the broker or customer pays only for the mileage traveled while the goods are being transported from their origin to their destination. The customer does not pay for the tractor-trailer's return trip to its origin point or base. Under dedicated equipment contracts, the broker or customer pays a reduced mileage rate, but must pay for both legs of the tractor-trailer's trip. Because of this responsibility, dedicated equipment contracts, including the Agreement, grant the broker or customer the right to transport a second load of goods from at or around the destination point back to the at or around the origin point on any given return trip. If the broker or customer opts to have the tractor-trailer transport such goods on the return trip, they are referred to as a "backhaul load." Bretl Decl. at ¶ 10.

Under the Agreement, backhaul loads were contracted at Framaur's discretion. Statement at ¶ 12. If Framaur itself arranged for a backhaul load, it would receive 100% of the revenue from the customer paying to have goods transported by the Arnold tractor-trailer on its return

trip. Bretl Decl. at ¶ 11. If Arnold arranged for a backhaul load for Framaur, Framaur received 90% of the revenue from the return trip, with the 10% going to Arnold as a finders' fee. *Id.*

The Agreement was originally set to terminate on September 6, 2015. Bretl Decl. at Ex. 2. On March 19, 2014, Arnold[1] reached out to Framaur to explain that Arnold required a per mile price increase in order to make a profit. Statement at ¶ 22; Bretl Decl. at ¶ 14. On March 20, 2014, Arnold proposed in an e-mail to amend the Agreement to increase the mileage charge from $1.40 to $1.70 per mile for the dedicated equipment. Statement at ¶ 23; Bretl Decl. at ¶ 14. On March 27, 2014, Arnold sent another email clarifying that the 2,350 mile weekly minimum would remain in place if the $1.70 per mile price were agreed upon. Statement at ¶ 24; Bretl Decl. at ¶ 15. On March 28, 2014, Framaur[2] responded to Arnold's e-mail and proposed new contract terms, including the following:

> 20 trucks $1.70 per mile 2350 miles
>
> 10-15 OTR loads during peak season upon request (2 weeks notice) pricing submitted previously
>
> 3 to 1 trailer pool
>
> Framaur 100% on backhauls secured
>
> 80/20 split on Arnold secured backhauls
>
> Payment 60 days (POD's must be received)
>
> Comments: Need newer tractors and commitment to improve overall service and communication previously discussed.

Bretl Decl. at Ex. 3.

---

[1] The e-mails were sent by Arnold Chief Financial Officer, JP Bretl.
[2] The e-mails were sent by Framaur Vice President Tom D'Agostino, Jr.

On March 29, 2014, Arnold responded, again by e-mail, stating "i will get document drafted asap." *Id.* Arnold also stated that it would make 20 tractors available to Framaur as of "monday" (the next Monday after Arnold's email being March 31, 2014) and that pricing would be "$1.70 as of monday." *Id.* at ¶ 15. Ex. 3; Statement at ¶¶ 26-27. Framaur did not object to Arnold's statement that the new price would go into effect on the coming Monday. Bretl Decl. at ¶ 15. Arnold began sending Framaur invoices reflecting the new, $1.70 price shortly thereafter. Framaur did not raise the issue of price or object to the $1.70 per mile price until shortly before July 8, 2014, when the Complaint in this action was filed. Bretl Decl. at ¶ 16.

Arnold's standard billing practice with Framaur was to send Framaur a spreadsheet each week invoicing the mileage fees and other expenses that had been incurred that week and updating Framaur's total outstanding obligation to Arnold. Bretl Decl. at ¶ 17. Beginning in February 2014, Arnold and Framaur engaged in regular conference calls, usually held on a weekly basis, to review the week's spreadsheet. *Id.* at ¶ 18. During these calls, Framaur raised only one objection to the charges that had been invoiced; Framaur claimed that Arnold billed Framaur for weekly minimum mileage on tractors that were not in fact available for Framaur's use in the preceding week. The parties referred to these disputed charges as "deficit miles." Prior to the initiation of this litigation, and without conducting a full investigation into the "deficit mileage" claim, Arnold agreed with Framaur to discount the amount of the unpaid invoices by $112,331.80 to resolve Framaur's objection. *Id.*; Statement at ¶ 2.

From November 2012 to April 2014, Defendant Framaur Associates, LLC ("Framaur") failed to pay $1,480,729.80 invoiced by Plaintiff Arnold. Statement at ¶1; Bretl. Decl. ¶¶ 3-4, 20, Ex. 1A. Accounting for the $112,331.80 deduction to resolve the "deficit mileage" issue, $1,368,398.01 remains outstanding. Statement at ¶ 2; Bretl Decl. at ¶ 20, Ex. 1A. Of that total,

$1,134,231.23 originated from invoices that were entirely unpaid by Framaur. Statement at ¶ 3; Bretl Decl. ¶¶ 3-4, Ex. 1A. The remaining $234,166.78 originated from invoices that Framaur partially paid, but refused to pay in full. Statement at ¶ 4. The parties referred to these partial payments as "short pays." On May 19, 2014, Framaur objected to $63,933.81 of the short pays on the grounds that Arnold had not reported the mileage properly. Bretl Decl. at ¶ 21. Framaur has not provided any explanation for the remainder of the short pays. *Id*.

In an e-mail dated July 1, 2014, Framaur acknowledged that it owed $938,714.30 of the $1,368,398.01 claimed by Arnold. Bretl Decl. at ¶ 22. Framaur disputed the remaining balance on the grounds that (i) it never agreed to increase the per mile charge to $1.70 from $1.40 (a $65,405.10 deduction); (ii) Arnold failed to provide proof of deliveries ("PODs") for certain shipments (a $119,782.01[3] deduction); and (iii) Arnold double-billed or overbilled Framaur on certain occasions (a $74,263.63 deduction). *Id.* at ¶¶ 24-26.

Under the Agreement, either party could end the dedicated equipment relationship by giving 90-days' notice. Statement at ¶ 15; Bretl Decl. at ¶ 7. On April 17, 2014, Framaur sent Arnold an e-mail stating that it was exercising its right to terminate the contract on 90-days' notice. Statement at ¶ 32; Bretl Decl. at ¶ 34. On April 25, 2014, Arnold informed Framaur that it owed in excess of $1 million for past due amounts and agreed that the relationship would be terminated. Statement at ¶ 33; Bretl Decl. at ¶ 35. Arnold shipped its final load for Framaur on

---

[3] Defendant's ledger reflects two rows setting forth payments made or to be made on missing PODs followed by a third row stating the "Total Amount of missing POD'S never billed." From their captions, it is not clear whether the preceding two rows should have been included within, rather than added to the "Total" set forth in the third row. In any case, however, it is clear that Defendant deducted *both* the two payment rows *and* the "Total" row from the amount owed Plaintiff. Plaintiff accordingly accepts Defendant's $119,782.01 figure, which will also be considered by this Court.

April 27, 2014. Statement at ¶ 34; Bretl. Decl. at ¶ 36. To date, Framaur has not paid any of the money claimed due to Arnold, including the supermajority of the invoices that Framaur does not dispute.

On July 8, 2014, Plaintiff filed a two-count Complaint, alleging breach of contract and, in the alternative, unjust enrichment. On August 18, 2014, Defendant moved to dismiss Plaintiff's unjust enrichment claim as barred by the existence of the express contract between the parties. The Court granted Defendant's motion and dismissed Plaintiff's unjust enrichment claim in an Opinion and Order dated March 31, 2015.

Prior to the Court's decision, on February 17, 2015, Defendant answered the Complaint and counterclaimed against Plaintiff for breach of contract and the implied covenants of good faith and fair dealing, claiming damages arising from Plaintiff's alleged failure to provide services promised in the Agreement, improper billing for inactive tractors, and failure to provide Defendant with 90-days' notice of the cancelation of the Agreement. Plaintiff answered Defendant's counterclaim on March 13, 2015.

Between August 2015 and March 2016, the Court repeatedly extended discovery and filing deadlines to allow for settlement negotiations between the parties. No settlement was reached. In its interrogatory responses and in representations to Plaintiff's counsel, Defendant stated that it would provide a damages expert report to substantiate its answer and counterclaims. Schmit Decl. at ¶ 8. No such report was provided. *Id.* After receiving two extensions of time, Defendant agreed to produce a Rule 30(b)(6) witness to provide discovery on its answer and counterclaims on July 14, 2016. *Id.* at ¶ 9. On July 13, 2016, Defendant informed Plaintiff that it would not be providing the 30(b)(6) witness. *Id.* at ¶ 11.

7

Plaintiff filed the present motion for summary judgment on July 22, 2016. In support of its motion Plaintiff submitted a copy of its invoice spreadsheet ledger, setting forth the dates and amounts of Plaintiff's invoices to Defendant, adjusted for backhaul loads, credits, tolls, and other charges as provided under the Agreement, along with declarations from JP Bretl, Plaintiff's CFO, and Joseph B. Schmit, Plaintiff's counsel, attesting to the authenticity of Plaintiff's business records and setting forth prior communications with Defendant.

Defendant's opposition was due on August 23, 2016, but no opposition was filed. Plaintiff filed a letter brief in further support of its motion on August 30, 2016, requesting judgment due to Defendant's failure to oppose the motion. The Court contacted Defendant's counsel and requested that Defendant's position on Plaintiff's request be entered on the docket. On September 14, 2016, Defendant, through counsel, filed a letter on the docket stating that Defendant declined to submit any further pleadings or otherwise oppose the Plaintiff's pending summary judgment motion.

In the present motion, Plaintiff seeks summary judgment on its breach of contract claim and an award of $1,368,398.01 in compensatory damages, plus pre-judgment interest, and sanctions pursuant to Fed. R. Civ. P. 11(b) in the form of attorney's fees and costs.

LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has

the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir.2006); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 202 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson,* 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor .' " *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir.2004) (*quoting Anderson,* 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir.2002).

  The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex,* 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 138 (3d Cir.2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence,* 396 F.3d 314, 319 (3d Cir.2005) (quotations omitted). Under *Anderson,* Plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324 (quotations omitted); *see also Matsushita,* 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley,* 172 F.3d 238, 252 (3d Cir.1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and

decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

If a non-movant fails to oppose the motion, Fed. R. Civ. P. 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." *See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Review,* 922 F.2d 168, 175 (3d Cir. 1990); *Damiano v. Sony Music Entm't,* 975 F.Supp. 623, 627 (D.N.J.1996) (granting summary judgment because defendant's argument was unopposed, and thus no genuine issue of material fact was created). The motion is appropriately granted when the movant is entitled to judgment as a matter of law. *Anchorage Assocs.,* 922 F.2d at 175.[4] When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all

---

[4] It is now well-established in this District that "[i]f a party fails to address the other party's properly supported assertion of fact, the court may consider 'grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it ....'" *Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 723 (D.N.J. 2013), *aff'd,* 559 F. App'x 139 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(e)). Indeed, "Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement." *Id.* (citing L. Civ. R. 56(a)). The Courts in this district interpret the Local Rule through the lens of the Third Circuit's seminal decision in *Anchorage Assocs*. There, the Third Circuit made clear that failure to dispute a party's statement of material facts "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review,* 922 F.2d 168, 175 (3d Cir. 1990). "There must, in addition, be a finding that judgment for the moving party is 'appropriate.' Where the moving party has the burden of proof on the relevant issues, this means that the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law. Where the moving party does not have the burden of proof on the relevant issues, this means that the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Id. See also Hawkins v. Globe Life Ins. Co.*, 105 F. Supp. 3d 430, 446 n.23 (D.N.J. 2015) (citing *Anchorage Associates v. Virgin Islands Bd. of Tax Review,* 922 F.2d 168, 175 (3d Cir. 1990) ("An unopposed motion is properly granted when the movant is entitled to judgment as a matter of law. Thus, even though plaintiff did not formally oppose defendant's argument defendant is not automatically entitled to summary judgment. It still must prove it is entitled to the judgment.").

material facts set forth by the moving party with appropriate record support." *Carp v. IRS,* No. 00–5992, 2002 WL 373448, at * 2 (D.N.J. Jan 28, 2002) (*quoting Anchorage Assocs.,* 922 F.2d at 175).

Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." *Morris Orman,* No. 87–5149, 1989 WL 17549, at * 8 (E.D.Pa. March 1, 1989) (*citing Childers v. Joseph,* 842 F.2d 689 (3d Cir.1988)); *see also Atkinson v. City of Phila.,* No. 99–1541, 2000 WL 793193, at * 5 n. 8 (E.D. Pa. June 20, 2000), *aff'd,* 281 F.3d 218 (3d Cir. 2001). Accordingly, because Defendant has declined to oppose Plaintiff's motion for summary judgment, Plaintiff's statement of material facts is deemed admitted pursuant to Fed. R. Civ. P. 56(e).

ANALYSIS

I. Defendant's Counterclaims

In its motion, Plaintiff moves for judgment on Defendant's counterclaims, arguing that by failing to produce either a 30(b)(6) witness or expert witness to substantiate Defendant's damages calculation, Defendant has effectively abandoned its counterclaims. Subsequently, Defendant, through counsel has indicated that it will not submit further pleadings or oppose Plaintiff's summary judgment motion. Taken together, Defendant's failure to participate in the discovery process, to introduce evidence into the record in support of its counterclaims, and Defendant's unequivocal statement to the Court that it would not defend those claims against

Plaintiff's motion for summary judgment indicate that Defendant has abandoned its counterclaims. Accordingly, Defendants' counterclaims are dismissed.[5]

II. Liability

In its Complaint, Plaintiff alleges that Defendant breached their Agreement by failing to timely pay approximately $1.48 million in invoices for transportation services rendered. Compl. ¶ 2; Bretl Decl. at Ex. 1A. "To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013).

---

[5] The Court observes that even had Defendant not formally abandoned its counterclaims, the complete dearth of affirmative evidence that Defendant suffered any injury would nevertheless defeat Defendant's claims. "Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 n. 2 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325). Here, Plaintiff's motion, statement of fact, and supporting declarations contend that the record is devoid of evidence that Defendant in fact suffered any economic loss or consequential damages as a result of Plaintiff's alleged breach of contract and of the duty of good faith and fair dealing. The Court's own review of the exhibits in the record has not uncovered any, rather finding only bare assertions of expenditures made by Defendant to pay for various transportation services. Without more, the Court could only speculate that such expenditures represent costs over and above those contemplated in the Agreement. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986) ("The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. . . . [T]he plaintiff [cannot] defeat the properly supported summary judgment motion . . . without offering any significant probative evidence tending to support the complaint. . . . Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.") (quotations omitted).

Plaintiff's statement of facts having been deemed admitted by operation of Rule 56(e); there is no dispute that the Agreement was valid and in force for the period between November 2011 and April 2014, when the $1.4 million in services were rendered. Bretl Decl. at Ex. 1A (showing dates of unpaid and partially paid invoices); Ex. 2 (showing contract effective dates from September 2012 to September 2015). Similarly, the facts support that Plaintiff provided over $1.4 million in services under the Agreement which were invoiced to Defendant. Bretl Decl. at ¶ 4 (certifying that the attached invoice spreadsheet ledger reflects the amount owed by Framaur to Arnold for shipping services). The Agreement obligated Defendant to pay for these services within 45 days of receipt. Statement at ¶ 14; Bretl Decl. at Ex. 2 (text of the Agreement). The last date on which Plaintiff provided services to Defendant under the Agreement was April 27, 2015. *Id.* at ¶ 34. Defendant had not paid the invoices as of the date of Plaintiff's motion and no evidence has been introduced to suggest that it has done so subsequently. *Id.* at ¶ 1. Defendant therefore failed to perform under the Agreement, when it did not pay the invoices within 45 days of receipt.

Under New Jersey law, "[t]he correct measure of damages for breach of contract is the expectation measure or the 'benefit of the bargain.'" *B.F. Hirsch v. Enright Ref. Co.*, 751 F.2d 628, 634 (3d Cir. 1984). Plaintiff seeks to recover $1,368,398.01 of the approximately $1.48 million to which it was entitled under the contract, having previously agreed with Defendant to a voluntary reduction in the amount due. Given that Plaintiff seeks to partially recover its reasonable expectation of payment under the Agreement, there can be no doubt that Defendant's failure to pay directly caused Plaintiff's claimed injury. Accordingly, summary judgment on Plaintiff's breach of contract claim is granted.

III. Damages

Having found that Plaintiff is entitled to judgment as a matter of law, the Court next turns to whether the evidence in the record supports Plaintiff's claimed amount of damages. Plaintiff seeks $1,368,398.01 in compensatory damages, plus pre-judgment interest, and sanctions pursuant to Fed. R. Civ. P. 11(b) in the form of attorney's fees and costs. Plaintiff has introduced sufficient evidence supporting its compensatory damages claims, but has failed to show that an award of sanctions is warranted in this case.

A. Compensatory Damages

1. Wholly Unpaid Invoices.

Plaintiff claims $1,134,231.23 in damages for invoices that Defendant failed to pay, and provides a certified version of Plaintiff's invoice spreadsheet ledger in support of its claims. Statement at ¶ 3; Bretl Decl. at Ex. 1A. Of this sum, Defendant concedes that $938,714.30 was owed. In a July 1, 2014 e-mail, Thomas D'Agostino, Jr., the Vice President of Defendant Framaur, sent JP Bretl, the Chief Financial Officer of Arnold, Defendant's spreadsheet ledger collecting the Arnold-Framaur invoice information, which D'Agostino represented set forth the amount Defendant owed Plaintiff. Bretl Decl. at Ex. 5. The ledger covers unpaid invoices subject to the Agreement for the period between January 27, 2014, and April 27, 2014, and states that Defendant owes Plaintiff $938,714.30. *Id.* at Ex. 5A.

The difference between Plaintiff's ledger and Defendant's ledger is accounted for by three factors. First, Defendant deducts $119,782.01 from the total owed due on invoices for which proofs of delivery or "PODs" were "missing." Plaintiff's undisputed facts, however, indicate that all deliveries were made and properly invoiced, and that provision of PODs was not a prerequisite for payment under the terms of the Agreement. Bretl Decl. at Ex. 2. In the absence

14

of any opposition from Defendant, the Court cannot find that Defendant's bare assertion of missing PODs alone creates a dispute of material fact as to Defendant's obligation to pay these invoices. Accordingly, the record reflects that Defendant properly owed Plaintiff $119,782.01 for the invoices for which Defendant claimed PODs were "missing."

Second, Defendant deducts $65,405.10 on the basis that it never consented to the increase in the mileage charge from $1.40 per mile to $1.70 per mile in March of 2014. Plaintiff contends that an email exchange between Plaintiff's and Defendant's principals on March 28-29, 2014, constituted a valid amendment to the Agreement's terms, effective March 31, 2014. Plaintiff is correct that the Agreement does not provide for the manner in which it may be modified, and accordingly the e-mail exchange between the parties could operate as an amendment to the Agreement. Bretl Decl. at Ex. 2. "Under New Jersey law, parties to an existing contract, by mutual assent, may modify their contract, and modification can be proved by an explicit agreement to modify, or . . . by the actions and conduct of the parties, so long as the intention to modify is mutual and clear. A proposed modification by one party to a contract must be accepted by the other to constitute mutual assent to modify . . . . In addition, an agreement to modify must be based on new or additional consideration." *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 322 (3d Cir. 2006) (citations omitted). On the undisputed facts before the Court, Plaintiff has demonstrated that a modification took place. On March 28, 2014, Tom D'Agostino, Jr., on behalf of Defendant, sent an email to JP Bretl, representing Plaintiff, proposing new contract terms, including an increase in the number of trucks provided by Plaintiff from 15 to 20 and an increase in the per mile price paid by Defendant from $1.40 to $1.70. Bretl Decl. at Ex. 3. On March 29, 2014, Bretl replied indicating that he would have the new agreement terms drafted, but stating that the additional trucks would be provided and higher price would be

15

charged effective the following Monday (March 31). *Id.* Defendant continued to accept trucking services from Plaintiff from March 31 until April 27, 2014, receiving weekly invoices over the period. Bretl. Decl at ¶¶ 16-19. Accordingly, the record evidences a mutual intent to modify the terms of the Agreement to increase the dedicated number of tractors and per mile price under the Agreement, new valuable consideration was exchanged through the provision of additional tractors by Plaintiff and the promise to pay higher prices by Defendant, and Defendant manifested its assent to Plaintiff's final March 29 proposal through its acceptance of Plaintiff's increased services.[6] Accordingly, the record reflects that Defendant properly owed Plaintiff $65,405.10 for the increased mileage rate.

Third and finally, Defendant deducts the remaining $10,329.82 due to several incidences of charging "deficit miles," double billing, and overbilling. In the absence of any supporting evidence in the record or opposition by Defendant, Plaintiff's ledger and certification reflect that Defendant properly owed Plaintiff $10,329.82.

2. Partially Paid Invoices.

Separate and apart from the unpaid invoices, Plaintiff also claims to be owed $234,166.78 for a series of invoices Plaintiff submitted between November 2012 and February 2014, for which it received only partial payment from Defendant. Plaintiff's spreadsheet ledger clearly shows the dates service was invoiced and the partial payments received. Bretl Decl. at Ex. 1A. In a May 19, 2014 e-mail, Defendant contested $63,933.81 of the "short pay" charges on the

---

[6] The Court observes that Defendant's ledger shows that the $1.70 rate was improperly billed in the period from March 24, 2014 to March 30, 2014 — before Plaintiff alleges the amendment to have gone into effect. Nevertheless, as Plaintiff has certified that the new price was only charged after Monday, March 31, 2014, Bretl Decl. at ¶ 15, and Defendant declines to oppose Plaintiff's motion, the Court cannot find a dispute of material fact preventing summary judgment.

grounds that many were the result of overbilling or incorrect billing after equipment failures with Plaintiff's tractors. *Id.* at Ex. 4. Defendant did not object to the remaining $170,232.97 of "short pays." In the absence of any counter-allegations from Defendant, these short pays are admittedly owed to Plaintiff. As was the case for the wholly unpaid invoices, for the remaining "short pays" Defendant has failed to produce any evidence in the record to support its overbilling claims or provide any other opposition to create an issue of material fact preventing summary judgment. Accordingly, the record reflects that Defendant properly owed Plaintiff the remaining $63,933.81 in contested short pays as well.

The Court finds adequate support in the record for each of Plaintiff's damages claims, and thus, Plaintiff is entitled to the $1,368,398.01 in compensatory damages it seeks in this motion. *See, e.g.*, *McKinley v. Skyline Corp.*, 900 F. Supp. 2d 408, 415–16 (D.N.J. 2012) (where motion for summary judgment "unopposed," moving party "properly supported motion for summary judgment" and non-moving party "failed to identify specific facts and affirmative evidence that contradict those offered by" by the moving party, summary judgment appropriate).

B. Attorney's Fees and Costs

In addition to compensatory damages, Plaintiff also seeks an award of attorney's fees and costs as a sanction against Defendant for pursuing its answer and counterclaims in bad faith as a delay tactic. Plaintiff contends that Defendant's failure to provide a 30(b)(6) witness or expert report in support of its claims, and abandonment of a negotiated settlement between the parties after having sought a stay of the litigation in order to pursue the settlement warrant sanctions under Rule 11. As an initial matter, Plaintiff's motion is not properly raised as an addendum to its motion for summary judgment. Under Rule 11 "[a] motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2).

Even were Plaintiff's motion properly before the Court, it would nevertheless fail on the record presently before the Court; Defendant's allegations with regard to at least the contested portions of the amount due, although insufficient to survive summary judgment without additional support, were not so "patently unmeritorious or frivolous" as to warrant sanctions. *LORI MOECK, In her capacity as parent & natural guarding of C.M. & A.M.; C.M. a minor; A.M., a minor v. PLEASANT VALLEY SCHOOL DISTRICT; DOUGLAS C. ARNOLD, Superintendent of Sch., Pleasant Valley Sch. District; ANTHONY A. FADULE, Assistant Superintendent of Sch., Pleasant Valley Sch. District; JOHN J. GRESS, Principal, Pleasant Valley Sch. District: MARK GETZ, Wrestling Coach, Pleasant Valley Sch. Dist. Pleasant Valley Sch. Dist., Appellant*, No. 16-2473, 2016 WL 7422258, at *3 (3d Cir. Dec. 23, 2016). Moreover, the Court cannot determine on the record before it whether Defendant's failure to timely provide discovery, and the failure of earlier settlement negotiations were the result of a calculated strategy of delay by Defendant. Plaintiff's motion for Rule 11 sanctions is thus denied without prejudice. If Plaintiff wishes to pursue such relief, it may file a separate and properly supported motion[7] within 30 days of the date of this Order and Opinion.

C. Pre-Judgment Interest

The Third Circuit has long held "that federal courts in diversity cases should apply state law with respect to prejudgment interest." *Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982). Accordingly, "New Jersey's prejudgment interest rule should be applied in a federal district court

---

[7] Although the Schmit Declaration provides the Court with some basis to evaluate Plaintiff's allegations concerning Defendant's promises and subsequent failure to provide 30(b)(6) and expert witnesses, Plaintiff has not directed the Court to any support in the record concerning Defendant's alleged bad-faith participation in settlement negotiations, which from a review of the docket, if substantiated, would constitute a significant portion of the delay and expense in this case.

sitting in New Jersey." *Id.* "[U]nder New Jersey law, a court may award prejudgment interest in its discretion in accordance with equitable principles."*Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co.,* 316 F.3d 431, 450 (3d Cir. 2003) (quoting *Liberty Lincoln–Mercury v. Ford Motor Co.*, 134 F.3d 557 (3d Cir. 1998)). "[T]he purpose of prejudgment interest is to 'compensate the plaintiff for the loss of income that would have been earned on the judgment had it been paid earlier.'" *Thabault v. Chait*, 541 F.3d 512, 533 (3d Cir. 2008) (quoting *Ruff v. Weintraub,* 105 N.J. 233, 519 A.2d 1384, 1390 (1987)). Here, Plaintiff has had to wait years to recover payments owed to it under a contract, the vast majority of which were admitted to be owed by Defendant. Bearing this in mind with the delays in the case brought about by Defendant's failure to timely provide discovery and Defendant's late withdrawal from settlement negotiations — whether or not part of an intentional strategy by Defendant — prejudgment interest is clearly warranted in this case. In the Order to follow, Plaintiff shall be directed to submit an affidavit setting forth the appropriate calculation of prejudgment interest in conformance with this Court's award of compensatory damages.

CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion on its breach of contract claim and will enter judgment in the amount of $1,368,398.01 plus prejudgment interest in the Order to follow; Defendant's counterclaims are dismissed; and Plaintiff's request for Rule 11(b) sanctions is denied without prejudice.

Dated: _____1/3/2017_____ _____/s/ Freda L. Wolfson_____
 The Honorable Freda L. Wolfson
 United States District Judge